UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>EDWARD ROBBINS,<br><br>　　　　　　　　　　　Defendant. | Case No.: 16cr1997 JM<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |

　　　This matter comes before the court on Defendant Edward Robbins's motion to suppress evidence. (Doc. No. 28.) For the following reasons, the court denies Robbins's motion.

**FACTUAL BACKGROUND**

　　　On September 1, 2016, the Government filed an indictment charging Robbins with one count of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm. (Doc. No. 13.) The indictment is based on Robbins's possession of a Glock 19 handgun, discovered during an August 17, 2016, traffic stop by San Diego Police Department ("SDPD") officers assigned to a gang suppression team.

　　　That afternoon, SDPD Officers Short and Schnautz were in a marked car on uniformed patrol near 200 Via De San Ysidro, San Ysidro, California. At around 5:00 p.m., another SDPD officer informed Officers Short and Schnautz that a silver

1

Infiniti sedan had just parked at the Knights Inn. Officers Short and Schnautz drove to the motel and saw a silver Infiniti that matched the description. The car had been reversed into a parking spot and had no front license plate. The officers approached the car on foot. (See Gov't Opp'n Ex. 1, Doc. No. 31-1, at 0:31).[1]

Upon arriving at the car, the officers told Robbins that he was missing his front license plate. (Id. at 0:36.) Robbins first told the officers that he lost it, and then that he had just gotten the car. (Id. at 0:38.) The officers asked Robbins for his license. Robbins responded that he did not have one. (Id. at 0:40–0:48.) They asked him if he was on probation or parole. Without providing specifics, Robbins stated that he had a vandalism offense from when he was younger. The officers again asked why he did not have a license, and Robbins responded with non-responsive and evasive answers. After more discussion, Robbins told the officers that the vandalism offense was felony vandalism, for which he did county time. Robbins stated that he was no longer on probation for that offense.

The officers followed up with more questions. They asked Robbins where he grew up. They asked if Robbins was caught up with gangs. They asked if Robbins's driver's license was suspended. (Id. at 2:06.) Robbins said no. (Id. at 2:10.) But Robbins did not provide a reason for not having his license with him, despite acknowledging that he had just driven to the store. The officers asked Robbins if he had another form of identification. (Id. at 2:45–3:05.) They asked him if he was "on paperwork" and discussed his tattoos. Robbins admitted that he used to be in a gang, but stated that he was no longer in a gang or on paperwork. (Id. at 5:00–6:00.) The officers asked Robbins for his height, weight, and social security number. (Id. at 6:16–6:30.)

///

---

[1] The encounter was captured on multiple officers' body-worn cameras. Citations to the factual account are to the footage from Officer Schnautz's body-worn camera, (Doc. No. 31-1), unless otherwise indicated.

At that point, the officers turned their attention to the room behind the car where Robbins was staying. They discussed whether or not there was movement from within the room. The officers once again asked Robbins about his gang affiliation and whether he was on paperwork. At about this same time, a report went out over the dispatch radio alerting the officers that Robbins's license was indeed suspended. (See Def.'s Mot. Ex. D, Doc. No. 28-2, at 7:02.) A minute or two later—approximately eight minutes into the encounter—Officer Short asked Robbins, "Hey bro, do you have anything illegal in this car man? Just be straight bro, what is it?" (Doc. No. 31-1 at 8:04.) Robbins responded that he had some marijuana in the car. (Id.)

The officers told Robbins that he could not drive a car with marijuana in it, and that because he had some marijuana, they were allowed to search the car for more marijuana. (Id. at 8:30.) The officers had Robbins step out of the car. When Robbins asked whether he was under arrest, Officer Schnautz said no. Nonetheless, Officer Schnautz handcuffed him, telling him that it was for the officers' safety and because, if Robbins ran, the officers might not be fast enough to catch him. Officer Schnautz moved Robbins away from the car and over to a police car. (Id. at 8:40–9:30.) Officer Short began searching the car. During that search, he found a handgun in the trunk. When Robbins complained a few minutes later that the officers were searching his car, an officer told Robbins that his car was being impounded anyway, because he had a suspended license. (Id. at 17:10.)

Throughout the encounter, at least two officers surrounded Robbins. While he was in the car, at least one officer remained on each side of the car, and as the exchange progressed, Officers Short and Schnautz called more police to the scene. In the end, at least four cars and ten officers had arrived. Despite this considerable police presence, both sides in the exchange remained peaceful and respectful. The footage demonstrates that Robbins calmly answered the officers' questions without objection, and the officers were courteous and civil toward Robbins.

///

**DISCUSSION**

The court has identified five questions that must be answered in ruling on Robbins's motion: whether (1) the initial stop was justified; (2) the officers improperly extended the stop to search for contraband; (3) Robbins suffered a suppressible Miranda violation; (4) Robbins's statement that he had marijuana was involuntary; and (5) the search of the trunk was proper.[2]  The court will take each question in turn.

**1.      The Initial Stop Was Justified**

Police may stop a car to investigate individuals where there is "reasonable suspicion" of illegal activity.  United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc); see also Terry v. Ohio, 392 U.S. 1 (1968); Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015) ("A seizure for a traffic violation justifies a police investigation of that violation.  A relatively brief encounter, a routine traffic stop is more analogous to a so-called Terry stop than to a formal arrest." (internal quotations and

---

[2]  Robbins also argues that the Government cannot claim that the officers discovered the gun during an inventory search of the car.  As Robbins points out, inventory searches are only proper after a car is impounded, and Robbins was not arrested until after the officers found the gun in his trunk.  Thus, Robbins argues, without the improper arrest, there would be no basis for impounding the car, and no discovery of the gun during an inventory search.  The Government responds by stating that the gun is admissible under the "inevitable discovery" doctrine because the car was going to be impounded due to Robbins's suspended license, and therefore officers would have inevitably discovered the gun during a later—and at that time proper—inventory search.  It is true that vehicles may be impounded when the driver's license has been suspended.  People v. Duncan, 160 Cal. App. 4th 1014, 1019 (Cal. App. 2008).  And an officer did tell Robbins at the time that they were going to impound the car because his license was suspended.  But that was after Officer Short found the gun, and as Robbins points out, the officers never actually cited Robbins for having a suspended license (or any other traffic violation).  Thus, to accept the Government's argument on this point, the court would have to assume that, no matter what else happened that afternoon, Robbins would have been cited for his suspended license, his car would have been impounded, and the gun would inevitably have been found in the trunk.  Because Robbins's motion to suppress must be denied on other grounds, the court declines to undertake that retrospective and counterfactual inquiry.

alterations omitted)). "Reasonable suspicion requires a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. King, 244 F.3d 736, 738 (9th Cir. 2001) (internal quotations omitted). And so long as officers have reasonable suspicion to justify a stop for one offense, they may use that stop to investigate a different offense. Id. Simply put, "an officer [may] conduct a pretextual traffic stop as a means to uncover other criminal activity . . . ." Id.

Here, it was readily apparent that Robbins's car was missing a front license plate. Thus, the officers had reasonable suspicion to believe that Robbins had violated a traffic law, and the initial stop was lawful.

## 2.     The Officers Did Not Improperly Prolong the Stop

The Supreme Court recently stated that, "[l]ike a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." Rodriguez, 135 S. Ct. at 1614 (internal citations omitted). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Id. (internal quotations and alterations omitted).

But an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop." Id. at 1615. "[H]e may not do so in a way that prolongs the stop, [however], absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. (internal quotations and alterations omitted). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely

and responsibly." Id. (distinguishing a dog sniff, which "is a measure aimed at detecting evidence of ordinary criminal wrongdoing" (internal quotations and alterations omitted)).

In line with the Supreme Court's guidance in Rodriguez, the Ninth Circuit has also held that officers may question the driver for reasons unrelated to the stop so long as the questions do not unreasonably prolong the stop. See United States v. Turvin, 517 F.3d 1097, 1103–04 (9th Cir. 2008); United States v. Torres-Sanchez, 83 F.3d 1123, 1128 (9th Cir. 1996) (holding that continued detention was justified where the defendant's answers "failed to dispel [the officer's] suspicions about illegal activity and actually created new ones"). Furthermore, a "period of detention [may be] permissibly extended [where] new grounds for suspicion of criminal activity continue[] to unfold." United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005).

Here, after telling Robbins he was missing a front license plate, the officers asked him background questions, including whether he had a driver's license. When Robbins told the officers he did not have his license, the officers inquired further. And because Robbins did not have a license, it took the officers slightly longer to obtain his personal information. During that time, they also asked him about his criminal history, as well as his parole and probation status, likely to determine if there were warrants for his arrest. Those questions complied with Rodriguez.

Yet there is no denying that the officers' attention quickly shifted from the missing license plate to other possible criminal activity. After initially noting the front plate's absence, they never discussed that issue again, instead radioing for other officers and asking Robbins whether he was involved with a gang or "on paperwork." Robbins argues that, by focusing on issues other than the missing front plate and calling in backup, the officers improperly prolonged the stop.

The court disagrees. By immediately focusing on other issues, the officers demonstrated that they were using the missing front license plate as a pretext to stop Robbins. That is a separate issue, however, and is permissible, as discussed above. What is important is whether that focus prolonged the stop. While it is likely true that the

officers could have given Robbins a citation for the missing front license plate quite quickly, it is not necessarily true that they could have given him that citation—and another one for driving on a suspended license—within the eight minutes it took them to learn that he had marijuana in the car. Moreover, if there was any delay, Robbins's own failure to possess a valid license presumably caused at least a portion of that delay. Therefore, the court finds that the officers did not impermissibly prolong the stop. See United States v. Mendez, 476 F.3d 1077, 1079–80 (9th Cir. 2007) (affirming, in felon-in-possession case, district court's determination that an eight-minute stop was not unnecessarily prolonged by questioning that occurred while an identification check was ongoing).

**3.   Robbins Did Not Suffer a Suppressible <u>Miranda</u> Violation**

If the Government sought to use Robbins's statement against him on a marijuana charge, he could reasonably argue that the officers should have given him Miranda warnings before asking him whether he had anything illegal in the car. That question was certainly likely to elicit incriminating information, see Rhode Island v. Innis, 446 U.S. 291, 301 (1980), and Robbins may have been in custody, as well, see United States v. Craighead, 539 F.3d 1073, 1082 (9th Cir. 2008). That question is irrelevant here, however, because the Supreme Court has made clear that an officer's failure to give Miranda warnings does not require suppression of the physical, non-testimonial fruits of an individual's unwarned but voluntary statements. United States v. Patane, 542 U.S. 630, 633–34 (2004). Thus, while Robbins did not receive Miranda warnings before Officer Short's question, if his statement was voluntary, the Government may use the physical fruits of that unwarned statement. That leads to the next question: was Robbins's statement voluntary?

**4.   Robbins's Statement Was Voluntary**

Robbins argues that his confession was involuntary, in which case discovery of the gun may be suppressed as fruit of the poisonous tree. See Patane, 542 U.S. at 640; United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1048–49 (9th Cir. 1990). For that to

be the case, though, it must be shown that Robbins's "will was overborne by the circumstances surrounding the giving of a confession . . . consider[ing] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation."  Dickerson v. United States, 530 U.S. 428, 434 (2000).

While there were multiple police cars and officers on the scene, there is simply no basis for concluding that Robbins's statement regarding the marijuana was involuntary. Officer Short asked the question, and Robbins answered it.  There was no pressure, no intimidation, and no repeated inquiry.  In fact, the question tracked the tone of the entire exchange.  Throughout the encounter, the officers and Robbins were composed and matter-of-fact in their dealings with each other.  Hence, Robbins's statement was voluntary.

**5.     The Trunk Search Was Proper**

Finally, as a warrantless search, the Government bears the burden of proving that a "specifically established exception[] to the warrant requirement" applies.  United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotations omitted).  The Government argues that the automobile exception applies.  "Under the automobile exception . . . police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime."  United States v. Brooks, 610 F.3d 1186, 1193 (9th Cir. 2010).  "Probable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  A finding of probable cause must be supported by the objective facts known to the officer at the time of the search. See Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) (stating that "factual determinations bearing upon search and seizure . . . must be judged against an objective standard" based on "the facts available to the officer at the moment" (internal quotations omitted)).  The inquiry is a particularized one, requiring factual specificity that "evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.

Here, the Government asserts that Robbins's admission that he had marijuana in the passenger area gave the officers probable cause to search the remainder of Robbins's car.[3] Robbins makes two arguments in opposition.

First, Robbins argues that possession of marijuana cannot provide probable cause because such possession may not be a crime if an individual has a prescription, and the officers did not ask Robbins whether he lawfully possessed the marijuana. But it would not have made sense for the officers to ask that question. After all, Robbins told the officers about the marijuana in response to being asked whether he had anything "illegal" in the car.

Second, Robbins argues that possession of some amounts of marijuana is merely an "infraction" and not an arrestable offense, which, he claims, cannot provide probable cause to search the trunk. The court notes a few flaws in that argument. For one thing, Robbins provides no authority for the proposition that an infraction cannot give rise to probable cause. For another, the transportation of marijuana—an offense Robbins admitted to committing by acknowledging that he had just driven to the store and had marijuana in his car—<u>is</u> an arrestable offense. See Cal. Health and Safety Code § 11360. And in fact the officers made reference to that offense when alerting Robbins to the car search. Finally, as the California Court of Appeal has put it, "[a]rmed with the knowledge that there was marijuana in the car, a person of ordinary caution would conscientiously entertain a strong suspicion that even if defendant makes only personal use of the marijuana found in the passenger area, he might stash additional quantities for future use in other parts of the vehicle, including the trunk." People v. Strasburg, 148

---

[3] The fact that Robbins's car was blocked in does not negate the automobile exception. In United States v. Bagley, 772 F.2d 482 (9th Cir. 1985), the Ninth Circuit held "that under the automobile exception, probable cause alone suffices to justify a warrantless search of a vehicle lawfully *parked* in a public place, as long as the scope of the search is reasonable." Id. at 491 (emphasis added) (citing California v. Carney, 471 U.S. 386 (1985)).

Cal. App. 4th 1052, 1059 (2007), as modified (Apr. 3, 2007) (finding probable cause even though defendant had a medical marijuana prescription and could lawfully possess an amount of marijuana greater than what police first observed); cf. Sales v. City of Tustin, 649 F. App'x 615, 616 (9th Cir. 2016) ("The officer also has probable cause to arrest an individual for possession of a controlled substance when that individual admits he has marijuana.").

Thus, for the reasons stated, the officers had probable cause to search Robbins's trunk.

## CONCLUSION

In sum, the officers remained within bounds at each step of the encounter. The stop was warranted and not impermissibly prolonged. In response to Robbins's voluntary statement, the officers rightfully searched the car, and during that search, they found the gun. Consequently, the court denies Robbins's motion to suppress evidence.

IT IS SO ORDERED.

DATED: November 3, 2016

JEFFREY T. MILLER
United States District Judge